**Sue A. GRAMPP, a citizen of the State of Iowa, and Executor of the Estate of Inez E. Sudlow, Plaintiff,**

v.

**FRIENDSHIP MANOR OF THE ILLINOIS BRANCH OF THE KINGS DAUGHTERS AND SONS, INC., an Illinois corporation, Defendant.**

No. 86–4005.

United States District Court,
C.D. Illinois,
Rock Island Division.

Feb. 26, 1988.

**829**

pendent living unit at Friendship Manor, in which Inez E. Sudlow (hereafter Sudlow) resided, constitutes a "facility" under the Nursing Home Care Reform Act, Ill.Rev. Stat.1985, ch. 111½, ¶ 4151–101, *et seq.*

Count II of Plaintiff's Complaint arises from Sudlow's residence at Friendship Manor. In November of 1977, Sudlow entered into a written occupancy agreement with Friendship Manor. Sudlow paid an entrance endowment of $29,450 and a monthly service charge, in consideration for receiving identified services. Twenty-five percent of the monthly service charge constituted prepaid medical expenses.

Between November 7, 1977 and March 20, 1985, Sudlow resided in Apartment C–109, located in Building C of the Friendship Manor facility. On January 19, 1985, while bathing in her apartment, Sudlow came into contact with hot tap water flowing from the plumbing fixtures in Apartment C–109. The hot water inflicted second and third degree burns. On March 8, 1985, Sudlow died from the burn injuries sustained.

Resolution of the pending Motions for Summary Judgment requires this Court to determine whether Friendship Manor's independent living unit constitutes a "facility" under the Nursing Home Act (hereafter the Act). A "facility," within the Act, is one which provides: (1) personal care; (2) sheltered care; or (3) nursing care for three or more persons. Ill.Rev.Stat.1985, ch. 111½, ¶ 4151–113. This provision of the Act includes skilled care facilities and intermediate care facilities as defined by Title XVIII and XIX of the federal Social Security Act, 42 U.S.C. § 1395 *et seq.* and 1396 *et seq.*

Personal care is defined in the Act as: "Assistance with meals, dressing, movement, bathing or other personal needs or maintenance, or general supervision in oversight of the physical and mental well being of an individual, who is incapable of maintaining a private, independent residence or who is incapable of managing his person whether or not a guardian has been appointed for such an individu-

Ralph H. Heninger, Davenport, Iowa, for plaintiff.

John Patton, Bozeman, Neighbour, Patton & Noe, Moline, Ill., B. Douglas Stephens, Jr., Vandercamp, Cleaver & Stojan, Rock Island, Ill., for defendant.

## ORDER

MIHM, District Judge.

Pending before this Court is the Defendant's Motion for Summary Judgment as to Count II of Plaintiff's Complaint, and the Plaintiff's Cross Motion for Summary Judgment as to the same count. The issue presented in both Motions for Summary Judgment is identical; whether the inde-

al." Ill.Rev.Stat.1985, ch. 111½, ¶ 4151–120.

Shelter care is defined by the statute as "maintenance and personal care." Ill.Rev. Stat.1985, ch. 111½, ¶ 4151–124. Maintenance is defined by the Act as "food, shelter, and laundry services." Ill.Rev.Stat. 1985, ch. 111½, ¶ 4151–116.

"Nursing care" is the only term which is not expressly defined in the Act. The Life Care Facilities Act defines nursing services in its definitional section, which also contains definitions of "personal care" and "maintenance" identical to those found in the Act. The statute provides:

> "Nursing services means those services pertaining to the curative, restorative, and preventive aspects of nursing care that are performed at the direction of a physician licensed under the 'Medical Practice Act' or under the supervision of a registered or licensed practical nurse as defined in 'the Illinois Nursing Act'." Ill.Rev.Stat.1985, ch. 111½, ¶ 4160–2(k).

The Minimum Standards Rules and Regulations for Classification and Licensure of Skilled Nursing Facilities and Intermediate Care Facilities, Title 77, Illinois Administrative Code, Part 300, discusses at length what constitutes nursing care. These provisions provide that nursing care does not include sporadic visits for assessment purposes.

An institution being operated in the State of Illinois which constitutes a "facility" under the Act must be licensed by the State of Illinois. Ill.Rev.Stat.1985, ch. 111½, ¶ 4153–101 et seq. Friendship Manor is a tri-level of care institution. The continuum of care it provides includes independent living units, an assisted living facility, and the Silver Cross Nursing Center. The independent living units provide the greatest independence to its residents. In contrast, the Silver Cross Nursing Center is a skilled nursing facility, and provides the least amount of independence to its residents. Friendship Manor concedes that its assisted living facility and Silver Cross Nursing Center provide skilled care and intermediate care, and are the licensed portions of its institution. There is no dispute that

these portions of the institution are subject to the Act. However, it is disputed that Friendship Manor's independent living unit constitutes a "facility" under the Act.

The resolution of this issue requires the Court to examine the evidence in the record which establishes the type of care provided in the Friendship Manor independent living unit to determine, in light of the relevant statutory provisions, whether the type of care constitutes either "personal," "sheltered," or "nursing care," as defined by the statute. If the Court finds that it does, then it would be required to also find that Friendship Manor's independent living units constitute a "facility" under the Act. If the Court finds that the care given to Friendship Manor independent living residents does not constitute one of the Act's defined levels of care, then it will be required to also find that these units are not "a facility" under the Act, and therefore, the Act does not apply to Friendship Manor independent living units.

In the record are several affidavits and the deposition of Sudlow's daughter, Sue Grampp, in addition to copies of nursing notes kept by Friendship Manor employees. Exhibit A of Defendant's Motion for Summary Judgment is the affidavit of Marie Brobston, Administrator of Friendship Manor. Miss Brobston attests that Sudlow was not receiving personal care, sheltered care, or nursing care as defined by the Act. The building in which Sudlow resided is not licensed under the Act. Rather, Sudlow resided in a private independent dwelling unit of Friendship Manor.

The Defendant's Motion for Summary Judgment argues that although emergency services were available to Sudlow by virtue of her occupancy agreement, these services were dispatched from the licensed skill care and sheltered care facility of Friendship Manor. In Brobston's deposition she states:

> "Residents pay an endowment, sign a contract to live at Friendship Manor, to live independently, both financially and physically. If their physical condition deteriorates, then they have life use of all of the facilities of Friendship Manor, in-

cluding the nursing center, the licensed areas." (Brobston deposition p. 10, line 11–13).

Further, she attests that "residents live independently in Buildings A, B, C, and D," (Brobston deposition p. 10, line 2–3), and "Friendship Manor provides no care to residents in these independent living units." (Brobston deposition p. 67, lines 13–14). Brobston further stated that "the services which are available to the residents in independent living units include: (1) flat laundry (towels, sheets, and pillow cases); (2) assistance with meals (only at the request of the resident and at no cost to him or her); and (3) apartment cleaning and maintenance." (Brobston deposition p. 33, line 8).

Brobston testified that "extended care" or "special care" is also available to the residents in independent living units, although it is limited. "Extended care" or "special care" includes weekly housekeeping, assistance with laundry, assistance with the purchase of groceries, and assistance with bathing. The Friendship Manor employees would also assist the resident with dressing if they were present and help was needed; however, she pointed out that the "extended care" or "special care" service is only available from 6:30 a.m. to 1:00 p.m. Therefore, Friendship Manor employees could assist the resident with morning dress, however, the resident would have to be able to undress independently in the evening. (Brobston deposition p. 76, line 11–23).

As to nursing care, Brobston testified that on occasion a nursing staff member will visit residents of the independent living unit. (Brobston deposition p. 17–40). These nurse visits are in response to a resident's request. (Brobston deposition p. 17–40). Once at the resident's unit, the nurse's services are limited to an assessment of the medical condition of the resident. No medical care is provided in the apartment unit. (Brobston deposition p. 17–40). No medication is administered. (Brobston deposition p. 17–40). Rather, the nurse determines the needs of the resident at that time and will call for the appropriate medical assistance, as she determines

necessary. (Brobston deposition p. 17–40). This may include a request for a doctor from the licensed facility, an ambulance, or the resident's private physician. (Brobston deposition p. 17–40). Throughout her deposition, Brobston emphasized that these nursing services are limited to assessment of the resident's condition.

Additionally in the record is the affidavit of Sudlow's daughter, Sue Grampp. In her affidavit, Grampp attests that Friendship Manor was selected for Sudlow's "retirement housing ... because she no longer desired to maintain the upkeep of her house." In selecting the appropriate retirement housing, Grampp and Sudlow referred to a published guide by the Illinois Department of Aging entitled, "How to Select a Nursing Home and Alternatives to Nursing Home Care ... A Guide."

Grampp testified that Friendship Manor provided to Sudlow: (1) flat laundry service; (2) housekeeping services, which consisted of assistance with vacuuming, mopping, cleaning the bathroom and kitchen fixtures, and, dusting; (3) upon request Friendship Manor staff would prepare and provide meals to Sudlow from the cafeteria; (4) a "vial of life," which is a container in which important medical information concerning Sudlow was stored, was kept in the refrigerator at the suggestion of Friendship Manor; (5) periodically, Friendship Manor staff attended to Sudlow's medical needs by visiting her at her apartment. Some of these visits were non-emergency, and consisted of a Friendship Manor staff member checking Sudlow's vital signs and blood pressure, while visiting with her in her room; and (6) during Sudlow's five year residency at Friendship Manor, she only once had an emergency situation arise and that was the night that she was scalded by hot tap water in the shower.

A review of the record in this case, which includes exhibits, in addition to the affidavits specifically discussed, leads this Court to the conclusion that Friendship Manor's independent living units do not constitute a "facility" under the Nursing Home Care Reform Act, Ill.Rev.Stat.1985, ch. 111½,

¶ 4151–101, et seq. Although there is evidence in the record that Friendship Manor did provide assistance with meals, dressing, movement, bathing, and other personal needs, these services were not provided to one:

"... who is incapable of maintaining a private, independent residence or who is incapable of maintaining a private, independent residence or who is incapable of managing his or her person, whether or not a guardian has been appointed for such an individual."

Although the record does establish that Sudlow made use of some of the services available to her at Friendship Manor, the record does not establish that she was incapable of maintaining her independent residence and caring for her personal needs. Thus, this Court is led to the inescapable conclusion that the Friendship Manor independent living units were not providing "personal care" to Sudlow as defined by statute.

In light of this Court's finding that Sudlow was not receiving personal care from Friendship Manor, it must also find that Sudlow was not receiving sheltered care in the independent living unit. Sheltered care is defined by the statute as "maintenance and personal care." Ill.Rev.Stat.1985, ch. 111½, ¶ 4151–124. Therefore, the Court finds that Sudlow was not receiving sheltered care from Friendship Manor.

Lastly, the Court finds that Sudlow was not receiving "nursing care" at the independent living unit, as that term is defined by the statute. This Court's reading of the statute's definition of nursing care is that this level of care entails services by a registered nurse or at the direction of a licensed physician in response to the medical needs of the resident. The Court concludes that such care entails more than a nursing assessment of a resident's condition, and the maintenance of a "vial of life" in the resident's refrigerator. The Court finds that the evidence in the record does not establish that the level of care received by Sudlow rose to the level of "nursing care" as defined or envisioned by the statute.

For these reasons, the Court finds that Friendship Manor did not provide to Sudlow personal care, sheltered care, or nursing care, as defined by the Nursing Home Care Reform Act, Ill.Rev.Stat.1985, ch. 111½, ¶ 4151–101 et seq. Further, in the absence of evidence in the record that such care was provided to any other residents of Friendship Manor, this Court finds that Friendship Manor's independent living unit is not a "facility" under the Nursing Home Care Reform Act. Although there may be many continuing disputes among the parties as to this claim of the Complaint, the Court finds that there are no genuine disputes of material fact based upon the record before the Court. Therefore, Count II of Plaintiff's Complaint, brought pursuant to the Illinois Nursing Home Care Reform Act, cannot be sustained, and the Defendant's Motion for Summary Judgment must be GRANTED.

Care for the senior citizens in this country has been evolving and changing at a rapid pace. Clearly, the Illinois Nursing Home Care Reform Act was an effort to protect the interests of senior citizens who choose or are forced to reside outside of the traditional "home." However, it is apparent that the recent evolution of senior citizen care has resulted in the development of components of nursing home life which were not contemplated by and are not covered by the present Act. It is the Court's opinion that Friendship Manor's independent living units constitute such a component.

The Court is sympathetic with the concerns of the Plaintiff and the arguable absence of adequate statutory protections for a facility like Friendship Manor's independent living unit. The Court will go so far as to state that it appears that new legislation is required which will address this type of facility. However, this Court cannot and should not attempt to perform the important work of the Illinois Legislature.

It is ordered that the Defendant's Motion for Summary Judgment is GRANTED. Further, it is ordered that the Plaintiff's

Cross Motion for Summary Judgment is DENIED.